UNITED STATES, Appellee,

v.

Specialist Four Gerald DAVIS,
427–15–2409 United States
Army, Appellant.

CM 446556.

U.S. Army Court of Military Review.

18 Sept. 1985.

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Captain Rita R. Carroll, JAGC, First Lieutenant Lorraine Lee, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Major Larry D. Williams, JAGC, Captain Denise A.G. Erickson, JAGC (on brief).

Before WOLD, FELDER, and NAUGHTON Appellate Military Judges.

## OPINION OF THE COURT

WOLD, Senior Judge:

On 16 October 1984, appellant was convicted, based on his pleas of guilty, of two specifications of wrongful distribution of cocaine and one specification of wrongful distribution of marijuana, all in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [hereinafter UCMJ]. The military judge, sitting alone as a general court-martial, sentenced appellant to a bad conduct discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged.

## I

During the sentencing proceedings, appellant submitted substantial evidence in extenuation and mitigation. Based on this showing, the trial judge announced on the record that he "strongly" recommended that the convening authority suspend the bad-conduct discharge. The staff judge advocate did not advise the convening authority of this recommendation in either his post-trial recommendation submitted pursuant to Rule for Courts-Martial [hereinafter

1. Public Law 98–209, 97 Stat. 1393 (1983).

RCM] 1106 or in an addendum thereto submitted following trial defense counsel's RCM 1106(f) response. The trial defense counsel submitted no matters for the convening authority's consideration under the provisions of RCM 1105 and failed to mention the trial judge's recommendation for suspension in her RCM 1106(f) response to the staff judge advocate's recommendation. As a result, the convening authority took action without considering the trial judge's recommendation for suspension.

Citing *United States v. Veney*, 6 M.J. 794 (A.C.M.R.1978), appellant claims that the staff judge advocate had a duty to advise the convening authority of the trial judge's recommendation and that the omission was plain error.

The government cogently responds that appellant has failed to take into account the effect of the Military Justice Act of 1983[1] and RCM 1105 and 1106, which eliminated the post-trial review and replaced it with the staff judge advocate's recommendation. Article 60(d), UCMJ, 10 U.S.C. § 860(d), provides that "[t]he recommendation of the staff judge advocate ... shall include such matters as the President may prescribe by regulation." Rule for Courts-Martial 1106(d)(3) specifies what this recommendation must contain, but does not include clemency recommendations. Clemency recommendations may be included at the discretion of the staff judge advocate under the provisions of RCM 1106(d)(5), but their inclusion is not mandatory. We agree with the government that:

> The responsibility for bringing favorable information to the attention of the convening authority has been deliberately shifted from the [s]taff [j]udge [a]dvocate to the trial defense counsel. Analysis of [RCM] 1105(b), Appendix 21, p. A21–72, Manual for Courts-Martial, 1984. Under [RCM] 1105(b) and [RCM] 1105(b)(4), the accused "may submit to the convening authority any written matters which may [reasonably] tend to affect the convening authority's decision ... to approve the sentence ... and may

include: ... clemency recommendations by ... the military judge ..."[2]

■ Thus, we are confronted with a perfectly adequate staff judge advocate recommendation, coupled with a failure on the part of the trial defense counsel to fulfill her duty to bring favorable matters to the attention of the convening authority. Since RCM 1105(d)(1) provides that failure to submit favorable matters shall be deemed a waiver of the right to submit such matters, the trial defense counsel's inaction waived appellant's right to submit the trial judge's suspension recommendation to the convening authority.[3] However, this waiver is a blind alley in the sort of case which is now before us. We are not here confronted with an error of omission in the staff judge advocate's recommendation; consequently, we are not concerned with the question whether the trial defense counsel waived such an error by failing to object to it. Instead, as noted, we are confronted with the trial defense counsel's failure to submit matters which she could have submitted on her own initiative.

## II

■ The next question is whether the trial defense counsel's failure to notify the convening authority of the trial judge's clemency recommendation deprived appellant of the effective assistance of counsel.[4] We hold that it did. The standard is set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *United States v. Jefferson,* 13 M.J. 1 (C.M.A.1982).

In *Strickland v. Washington,* the Supreme Court held that different burdens of proof apply to defendants who seek relief on the grounds of ineffective assistance of counsel, depending on the cause of the claimed ineffectiveness. The Court recognized three categories of situations.

First,

[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. See *United States v. Cronic,* ... [466 U.S. 648] 104 S.Ct. [2039] at 2046–2047, and n. 25 [80 L.Ed.2d 657 (1984)].

104 S.Ct. at 2067.

Second,

[o]ne type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan,* 446 U.S. [335] at 345–350, 100 S.Ct. [1708] at 1716–19 [64 L.Ed.2d 333

2. Government Reply to the Assignment of Error at 4. The legislative history of Article 60(d) confirms these observations. *See* Hearings on S. 2521 (The Military Justice Act of 1982) Before the Subcomm. on Manpower and Personnel of the Senate Comm. on Armed Services, 97th Cong., 2nd Sess. 18 (1982) (statement of William H. Taft IV, General Counsel, Department of Defense); S.Rep. No. 53, 98th Cong., 1st Sess. 7, 18–19, 21 (1983). *See also* Hearings on S. 974 (The Military Justice Act of 1983) Before the Subcomm. on Military Personnel and Compensation of the House Comm. on Armed Services, 98th Cong., 1st Sess. 40 (1983); H.R.Rep. No. 549, 98th Cong., 1st Sess. 15, 18–19 (1983).

3. RCM 1106(f)(6) provides that "[f]ailure of counsel for the accused to comment on any matter in the recommendation or matters attached to the recommendation in a timely manner shall waive later claim of error with regard to such matter in the absence of plain error" and Article 60(d), UCMJ, provides that "[f]ailure to object in the response to the recommendation or to any matter attached to the recommenda-

tion waives the right to object thereto." While the provisions of RCM 1106(f)(6) do not explicitly apply to matters *omitted* from the recommendation, the language of Article 60(d) and the legislative history of the 1983 amendments to Article 60, UCMJ, 10 U.S.C. § 860, indicate that this was the intended effect:

> If the accused has any objections to the staff judge advocate's recommendations, those objections must be raised in the response; failure to do so constitutes a waiver of the objection to the staff judge advocate's recommendation and the effect of the recommendation on the convening authority's action.

S.Rep. No. 53, 98th Cong., 1st Sess. 21 (1983).

4. *Cf. United States v. Barnes,* 3 M.J. 406, 407 (C.M.A.1977) (*Re* failure of defense counsel to raise alleged deficiencies in staff judge advocate's post-trial review: "[*United States v. Goode,* 1 M.J. 3 (C.M.A.1975),] recognized, by use of the phrase 'normally be deemed a waiver,' that a case could arise which involves inadequate representation by counsel....").

(1980) ] the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest.... Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and "that an actual conflict of interest adversely affected his lawyer's performance."

104 S.Ct. at 2067.

Third,

[c]onflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice....

It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding....

On the other hand, we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case....

.  .  .  .  .

... The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

104 S.Ct. at 2067-2068.

In *United States v. Jefferson,* the court confirmed its commitment to the rationale adopted in *United States v. Rivas,* 3 M.J. 282 (C.M.A.1977), *i.e.:*

"[T]he accused is entitled to the assistance of an attorney of reasonable competence" ... [who] will " 'exercise ... the customary skill and knowledge which normally prevails ... ' 'within the range of competence demanded of attorneys in criminal cases.' " ...

... [A] criminal accused is entitled to more than a competent counsel; his right is to one who *exercises* that competence without omission throughout the trial....

We will not second-guess the strategic or tactical decisions made at trial by defense counsel, but where inaction occurs at a critical point where action is compelled by the situation ... then the accused has been denied [effective assistance of counsel].

3 M.J. at 288–289 (footnotes omitted).

In addition, the court in *Jefferson* adopted the standard explicated in *United States v. DeCoster,* 624 F.2d 196 (D.C.Cir. 1979), *i.e.,* a demonstration of "serious incompetency that falls measurably below the performance ordinarily expected of fallible lawyers", plus a demonstration that "such inadequacy affected the trial result." 13 M.J. at 5–6.

Taken together, we find these principles congruent with the *Strickland* requirement of a breach of professional competence coupled with a showing of a "reasonable probability" of outcome-determinative prejudice. *See United States v. Jackson,* 18 M.J. 753 (A.C.M.R.1984); *contra, United States v. Scott,* 18 M.J. 629, 632–633 (N.M.C.M.R.1984) (Cassel, J., concurring).

Applying the *Strickland* and *Jefferson* standards to the case at bar, we find that submission of the trial judge's suspension recommendation prior to the convening authority's action on the sentence was, in this case, a "critical point where action [was] compelled by the situation." It was at that point, or never, that the convening authority had to be made aware of the sentencing authority's recommendation for suspension, and it was the convening authority who represented appellant's best chance for suspension of the adjudged discharge. *See United States v. Boatner,* 43 C.M.R. 216 (C.M.A.1971); *United States v. Rivera,* 42 C.M.R. 198, 199 (C.M.A.1970) ("It is at the level of the convening authority that an accused has his best opportunity for relief because of the former's broad powers which are not enjoyed by Courts of Military Review or even by this Court."). We can discern no possible tactical advantage for this appellant in keeping the convening authority ignorant of the trial judge's recommendation, especially since the response to the staff judge advocate's recommendation included a request that the convening au-

thority suspend the adjudged discharge. Our conclusion is that counsel's omission was an "unprofessional error" demonstrating "serious incompetency that falls measurably below the performance ordinarily expected of fallible lawyers."

We cannot know, of course, whether the convening authority would have been persuaded by the trial judge's recommendation for suspension of the bad-conduct discharge, and we therefore cannot know whether the trial defense counsel's failure to submit it in fact affected the convening authority's action on the sentence. However, we do not construe the *Jefferson/De-Coster* requirement of a "demonstrat[ion] ... that such inadequacy affected the ... result" to have contemplated that sort of retroactive mind reading. As noted above, we believe that *Jefferson's* melding of *Rivas* and *DeCoster* is in accord with *Strickland v. Washington,* which requires only a "reasonable probability" that the outcome would have been different but for counsel's error.

In the case at bar, appellant submitted substantial matters in extenuation and mitigation, including a clean prior record. The offenses for which he was sentenced, while serious, do not rule out a "reasonable probability" of suspension of the discharge. In a similar context, the United States Court of Military Appeals observed:

> The recommendation in this case was made by a person whose judgment and expertise could reasonably be expected to be weighed with great care by the convening authority.... Considering the entire record, we are convinced [that the omission was prejudicial]. *United States v. Rivera,* [42 C.M.R. 198 (C.M.A. 1970) ]; *United States v. Olson,* 41 C.M.R. 652 (A.C.M.R.1969).

*United States v. Arnold,* 44 C.M.R. 205, 207 (C.M.A.1972); *see also United States v. Titsworth,* 13 M.J. 147 (C.M.A.1982). Here, we are convinced that there is a "reasonable probability" that the conven-

ing authority would have suspended the adjudged discharge had he known of the trial judge's "strong" recommendation. Certainly the omission of that recommendation is "sufficient to undermine confidence in the outcome" of the initial review process in this case. A convening authority ought to give great deference to a trial judge's recommendations and we have no reason to believe that this convening authority would not have done so.

### III

The obvious remedy is to return the record for a new action by the convening authority—preceded, of course, by another opportunity for appellant to submit the trial judge's suspension recommendation for the convening authority's consideration. However, we must consider the legislative history of the 1983 amendments to Article 60, UCMJ:

> If there is an objection to an error that is deemed prejudicial under Article 59 during appellate review, it is the Committee's intent that appropriate corrective action be taken by appellate authorities without returning the case for further action by a convening authority.

S.Rep. No. 53, 98th Cong., 1st Sess. 21 (1983).

This presents something of a dilemma, since we have no authority to suspend any part of a court-martial sentence.[5] The situation before us appears to be one of the very few in which Congress's intent could not be fulfilled by actions taken by a Court of Military Review during the appellate process, and was evidently not considered when Congress passed the legislation in question. Rather than arbitrarily disapproving appellant's bad-conduct discharge and thus depriving all parties of the exercise of discretion by one who has the authority to suspend, we will in this limited circumstance return the case to the convening authority despite the above expression of Congressional intent.

---

5. *United States v. Occhi,* 2 M.J. 60 (C.M.A.1976); *see* Military Justice Act of 1983, Pub.L. No. 98–209, § 9(b), 97 Stat. 1393, 1405 (1983).

The action of the convening authority, dated 6 December 1984, is set aside. The record of trial is returned to The Judge Advocate General for new proceedings under the provisions of Article 60, Uniform Code of Military Justice, and Rules for Courts-Martial 1105 and 1106 and a new action by the same or a different convening authority.

Judge FELDER and Judge NAUGHTON concur.